[Cite as *In re Z.B.*, 2026-Ohio-1582.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: Z.B. AND J.E.M.H. | : |
| | :    C.A. No. 30690 |
| | : |
| | :    Trial Court Case Nos. H-2015-004794-0X; C-2025-004793-0Y |
| | : |
| | :    (Appeal from Common Pleas Court-Juvenile Division) |
| | : |
| | :    **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 1, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

OPINION

ROBERT ALAN BRENNER, Attorney for Appellant, Mother
MICHAEL P. ALLEN, Attorney for Appellee Montgomery County Department of Job and Family Services, Children Services Division
AMY E. BAILEY, Attorney for Appellee Father

TUCKER, J.

{¶ 1} Mother appeals from the judgment entry of the Montgomery County Common Pleas Court, Juvenile Division, terminating her parental rights and awarding appellee Montgomery County Department of Job and Family Services, Children Services Division ("MCCS"), permanent custody of her minor children J.H. and Z.B.

{¶ 2} Mother contends the trial court's award of permanent custody to MCCS is against the manifest weight of the evidence.

{¶ 3} For the reasons set forth below, we find Mother's argument to be unpersuasive and affirm the trial court's judgment.

**I. Background**

{¶ 4} MCCS became involved with Mother and the two children in 2015 when the agency filed a neglect and dependency complaint. At that time, J.H. was five years old, and Z.B. was four years old. The trial court adjudicated the children neglected and dependent in September 2015. Over the following years, the trial court ordered various placements, including to Mother with protective supervision, interim temporary custody to MCCS, temporary custody to the agency, legal custody to Mother, interim temporary custody and temporary custody to a third-party caregiver, legal custody to a relative, interim temporary custody to the agency again, and temporary custody to the agency again. Ultimately, MCCS moved for permanent custody of both children in August 2024.

**{¶ 5}** Following a hearing, a magistrate awarded MCCS permanent custody. Among other things, the magistrate found that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and that awarding MCCS permanent custody was in their best interest. Mother objected to the magistrate's decision, arguing that she largely had met her case plan objectives and that shortcomings regarding visitation were not her fault. Mother asserted that the magistrate should have ordered a second extension of temporary custody rather than awarding MCCS permanent custody.

**{¶ 6}** After conducting an independent review, the trial court overruled Mother's objections and awarded MCCS permanent custody. Like the magistrate, the trial court found that the children had been in the agency's temporary custody for at least 12 of 22 consecutive months and that awarding permanent custody to MCCS was in the children's best interest.

## II. Mother's Appeal

**{¶ 7}** Mother's sole assignment of error states:

**THE DECISION GRANTING PERMANENT CUSTODY TO MCJFS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶ 8}** Mother claims the manifest weight of the evidence does not support awarding MCCS permanent custody. Her entire argument is as follows:

> Testimony at the hearing revealed that Mother had housing. (Tr. 21, 40). Mother had income (Tr. 22, 41). Mother was receiving med management. (Tr. 23, 42).

> MCCS had no substance abuse concerns regarding Mother. (Tr. 24).

> Mother engaged in some parenting classes. (Tr. 24).

3

Mother loves her daughters. (Tr. 34, 38, 44), and she is bonded with her daughters (Tr. 46). Mother was consistent with visitations, when possible (Tr. 34). Z.B. wanted to visit her mother (Tr. 17). Mother was not visiting Z.B. recently due to a scheduling conflict with Z.B.'s school schedule (Tr. 31). J.H. had some phone contact with Mother (Tr. 35).

On objection, Mother argued that the trial court should have granted a second extension of temporary custody instead of permanent custody.

Appellant's Brief, p. 2.

{¶ 9} Without referencing the statutory best-interest factors that guide a trial court's discretion in permanent custody matters, Mother asserts that she largely satisfied her case plan objectives, that she maintained some degree of a relationship with her children, and that the weight of the evidence supported a second extension of temporary custody rather than terminating her parental rights.

{¶ 10} A trial court's decision to terminate parental rights must be supported by clear and convincing evidence. *In re L.C.*, 2011-Ohio-2066, ¶ 14 (2d Dist.). Clear and convincing evidence will produce in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). It must be more than a preponderance, but it need not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases. *Id*.

{¶ 11} Under R.C. 2151.414(B)(1), a trial court may terminate parental rights and grant permanent custody to a children services agency if that disposition is in the child's best interest and the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. "The standards that apply in reviewing decisions on the permanent custody of children and the termination of parental rights are sufficiency of the

4

evidence and manifest weight of the evidence." *In re A.W.*, 2025-Ohio-5657, ¶ 47 (2d Dist.), citing *In re Z.C.*, 2023-Ohio-4703, ¶ 1 (2d Dist.).

{¶ 12} Here Mother raises only a manifest-weight challenge. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 13} With the foregoing standards in mind, we conclude that the weight of the evidence supports granting MCCS permanent custody of J.H. and Z.B. Mother does not dispute that the children had been in MCCS's temporary custody for 12 or more months of a consecutive 22-month period. Rather, her argument about case plan progress and her relationship with the children implicitly challenges the trial court's best-interest determination.

{¶ 14} In awarding MCCS permanent custody, the trial court applied the following best-interest factors found in R.C. 2151.414(D)(1):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 15} The trial court made detailed findings addressing each of the foregoing factors. Those findings, which are supported by the record, reflect that J.H. was 15 years old and Z.B. was 14 years old at the time of the permanent custody decision. J.H. had a history of cognitive delays and behavioral issues, including stabbing a teacher at school and being adjudicated delinquent. However, J.H. was thriving in her current group-home placement, where she had been for two years. Z.B. likewise had a history of cognitive and development delays, as well as behavioral problems. She was thriving in a foster home, however, and reported feeling a sense of responsibility as she learned life skills.

{¶ 16} Z.B.'s biological father, C.B., is serving a life sentence in prison for first-degree murder. Neither child wished to have any contact with him. J.H.'s presumed father had not established paternity and had no desire to be involved in the case. J.H. had not seen Mother for six months and did not desire to have visitation with Mother. Z.B.'s most recent visit with Mother occurred approximately 10 months before the trial court's permanent custody decision. Z.B. desired to see Mother, but visits had been inconsistent. Both children believed that Mother prioritized men over them, that she was not protective of them, and that she could not parent them. The children reported feeling uncomfortable around Mother due to

6

her mental health. Both children desired to remain in their current placements. Neither child wished to return to Mother's care.

{¶ 17} The trial court noted that both children had experienced multiple placements over a 10-year period. It found them in need of a legally secure placement, which only could be achieved by awarding MCCS permanent custody. The trial court then considered Mother's case plan objectives, which addressed housing, income, mental health, and visitation. The trial court noted that Mother had stable housing but that a concern remained about unidentified individuals coming and going from her home. As for income, the trial court found that Mother received adequate disability and social security payments to care for the children. The trial court found that throughout the duration of MCCS's involvement with the children, Mother had a significant history of mental health issues and had struggled with depression and bipolar disorder. She was receiving case management services and medication but had stopped attending counseling or therapy sessions. Mother's caseworker expressed concern that Mother's mental health remained unstable. As for visitation, the trial court noted that Mother had not visited the children in a long time and that J.H. had no interest in seeing her. The trial court also observed that Mother's prior visits with Z.B. had been inconsistent. Finally, the trial court noted a guardian ad litem's recommendation of permanent custody to MCCS.

{¶ 18} Although Mother contends she is bonded with her children, we find it significant that J.H. had no desire to see her. In her own testimony, Mother characterized her bond with the children as "not a strong bond." We find it significant too that J.H. and Z.B. were teenagers who were able to express their preferences. They desired to stay in their current placements and believed that Mother was incapable of parenting them. For the first time, both children were thriving and doing well in their placements in MCCS's temporary custody.

7

Considering these facts, as well as the guardian ad litem's recommendation and the trial court's finding of a need for a legally secure placement, we find clear and convincing evidence supporting the trial court's determination that it was in the children's best interest to grant MCCS permanent custody.

{¶ 19} Although Mother apparently had made headway on her case-plan objectives, the best-interest analysis is "focused on the child, not on Mother or her case-plan progress per se*." In re A.S.*, 2026-Ohio-288, ¶ 17 (2d Dist.), citing *In re H.V.F.*, 2024-Ohio-5838, ¶ 53 (2d Dist.). "In essence, the '12 in 22' requirement recognizes a parent's right to raise his or her child and gives a parent a full 12 months to pursue a case plan and work toward reunification." *Id.*, citing *In re C.W.*, 2004-Ohio-6411, ¶ 21-23. "After that time, a children services agency generally must seek permanent custody, and the focus shifts to what is best for the child. . . . At that point, the best-interest factors are examined to determine whether an award of permanent custody would be best for a child's growth, stability, and security." *Id.* For the reasons set forth above, we believe the manifest weight of the evidence establishes that the best-interest factors support awarding MCCS permanent custody. Accordingly, we overrule Mother's assignment of error.

### III. Appellee's Brief Filed by C.B.

{¶ 20} Although he did not appeal from the trial court's judgment entry awarding MCCS permanent custody, C.B., the biological father of Z.B., has filed an appellee's brief in support of Mother's appeal.

{¶ 21} Father asserts that he has been incarcerated at the Southeastern Correctional Institution since August 2021. He claims that he asked to be present for the permanent custody hearing and that the magistrate erred by proceeding in his absence. He insists that

8

he should have been permitted to participate remotely even if doing so would have required a brief continuance.

{¶ 22} Upon review, we conclude that C.B.'s brief does not support Mother's assignment of error. C.B. was represented by counsel prior to the February 2025 permanent custody hearing. Counsel appeared at the hearing on C.B.'s behalf and raised no objection to proceeding in C.B.'s absence. C.B.'s attorney also filed no objections to the magistrate's decision granting MCCS permanent custody. If C.B. believed the magistrate had erred in holding the hearing without his remote participation, he needed to raise the issue through an objection. Finally, we note that C.B. did not appeal from the trial court's judgment entry overruling Mother's objections and granting MCCS permanent custody. Under these circumstances, his failure to participate in the permanent custody hearing remotely is not grounds for reversing the trial court's judgment.

### IV. Conclusion

{¶ 23} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.